CARR, J.
In the argument here, the appellant’s counsel relied solely on the doctrine held by this court in Bennett v. Hardaway, that a bill of exceptions to the opinion of a court, overruling a motion for a new trial made on the ground that the verdict is contrary to evidence, must contain the facts only which the court considered proved, and not a statement of the evidence given to the jury. In Carrington v. Bennett, I have given my view of that case, in which I was overruled by my brethren: I inclined to think, that under its authority, a bill of exceptions, which in a motion for a new trial, detailed all the *352 evidence, would be rejected by the appellate court, without considering, particularly, the nature or amount of that evidence: they thought the only effect of that case was, that it is not competent to a party, by way of exception to the refusal of a' new trial, to refer to the judgment of the appellate court, the credit of the witnesses; and that, therefore, the exception should contain the facts which the trying court considered as proved, not the evidence by which they were proved; that this rule applied to cases, where there is conflicting evidence; but that where the facts are not directly proved, but must be inferred, the appellate court must have the facts proved, in order that it may make the inferences. I cannot but think, that this construction rather curtails of its fair proportions, a case which was very" solemnly considered by this court: but waiving my own impressions, till the point can be settled by a full court, X have taken up the bill of exceptions in the *present case, and given the defendant, who succeeded with the court and jury, the full benefit of all his evidence, by throwing out of the case all the evidence given for the plaintiff, and considering every thing stated by the defendant’s witnesses, as proved. And taking the facts testified by the defendant’s own witnesses, as facts proved, it seems to me impossible to say, that they support either of his pleas; and yet the jury has found all the issues for the defendant. That they do not prove payment, or any thing from which payment may be inferred, is most manifest. Neither, to my mind, do they prove a gift, but the direct contrary, that the testator had not given, but merely intended to give. There is no promise even, no conversation between the parties. The uncle, expressly, to the question, have you given the money, answered, no. And, in the other conversations, he merely expressed his intended kindness and bounty to his nephew; never what he had done, or was then doing; always what he intended to do at a future day: and he gave reasons (which no doubt were weighty with him) why he delayed his intended bounty; that it was not well to give a young man too much, for it would make him proud and lazy. There is no gift, then, or any thing from which it can be inferred. But if a host of witnesses had proved, that the testator declared he had given the bond or the money to his nephew, it would have been of no avail, without some proof of delivery'. A verbal gift of a chattel, without actual delivery, does not pass the property to the donee. This is the settled doctrine of the modern decisions. In Irons v. Smallpiece, 2 Barn. & Ald. 552, chief justice Abbott said, “that by the law of England, in order to transfer property by gift, there must either be a deed, or instrument of gift, or there must be an actual delivery of the thing to the donee.” The rest of the court agreed in taking this as the settled doctrine. The same point is decided in Bunn v. Markham, 7 Taunt. 224; 2 Eng. Com. law. Rep. 81. That, to be sure, was a case of a donatio mortis causa; but with respect to the necessity of a delivery, *they stand precisely on the same ground as a | gift inter vivos. Bryson v. Brownrigg, 9 Ves. 1; Antrobus v. Smith, 12 Id. 39, (with other cases) contain the same doctrine. Here it is expressly proved, that the bond never was delivered, nor any written transfer made,; but that the testator retained the bond, which came regularly to the hands of 'his executors, and was distributed as a part of the estate. Proceeding, then, upon the ground that we may look into this bill of exceptions at all, I think it furnishes as strong a case as can well be imagined, of a verdict found contrary to evidence; and I shall not dissent from my brethren in affirming the judgment.
GREEN, J.
It was insisted, that the exceptions in this case were not well taken, that they cannot be looked into by the court, and that the case stands, as if it came up upon a general verdict, and motion for a new trial, without any thing upon which to found the motion; and this, upon the authority of Bennett v. Hardaway. I have already, in the case of Carrington v. Bennett, stated what I consider as the true principle and effect of that case, which I intirely approve of. It is that a party shall not be permitted so to frame a bill of exceptions, as to refer the credit of the witnesses to the appellate court. In that case, the testimony of the witnesses conflicted, and the just decision of the case depended upon the degree of credit due to, the witnesses, respectively, of which the appellate court had no criterion, such as the trying court had, upon which to form any' judgment. But, in the present case, there is no such difficulty: for, crediting or discrediting all or any' of the witnesses ad libi-tum, there is no evidence whatever which justifies the verdict. The jury found, that the defendant had paid the debt in question to the plaintiff, without a scintilla of proof or presumption to sustain the finding. If they had found truly upon that issue, then it would have been open to the plaintiff to move the court, if the other issues had been found against her, for a judgment non ^obstante veredicto, upon the ground that the last three pleas, if true, presented no legal bar to her action. This right, whether it.would have availed her or not, she has lost by the false finding upon the first plea; and she ought not to have lost it in that way. Again, crediting or discrediting all or any of the witnesses at pleasure, there is no evidence whatever of any good, legal or valuable consideration for the alleged gift; and without such proof, it was impossible to find truly, that either of the last three pleas was true; for they alleged such considerations, and the defendant was bound to prove them, to entitle him to a verdict on the issues .involving the truth of that allegation. Nor was this mere surplusage. If these strange pleas were good with these averments of consideration (of which I doubt very much, since an obligation could be dissolved at common law, only by cancelling, obliterating or surrendering it, or by some equivalent act, or by a strict performance of the condition, or by a release, and the statutes have given no additional plea, but that of payment to be proved by parol evidence) yet, without such averments, the pleas were *353 unquestionably bad, and might have been demurred to; or, after a verdict finding them true, a judgment might have been given against them, non obstante veredicto. Finally, (treating the evidence in the same way) there is none whatever to support these pleas, even without the averment of consideration; none whatever to establish a valid gift, having any effect, at law or in equity, either to release the obligation, or to vest in the appellee the property of-the bond, or of the money due upon it, or any right of action, at law or in equity, in respect to it, against the donor or his repesentatives, So parol gift, without an actual delivery of the thing given, can vest in the donee any right or title in or to the thing given, or divest the right or title of the donor. This is unquestionably settled as the common law. There was, indeed, formerly, some0 difference of opinion, upon this point: but all doubts are settled by the recent decisions in the english courts, both of law and equity; in the ‘'Common Pleas, in the case of Bunn v. Markham; and m the court of King’s Bench, in that of Irons v. Smallpiece; in which all the former authorities were considered, and both courts were unanimous. In the one case, the donor (if he may be so called) had written upon the parcels containing the property, the names of the person for whom they were intended, and requested his son to see the property delivered to the donees. In the other, a father, twelve months before his death, had given his son two colts: six months after, the son having been to a neighbouring market, to purchase hay for the colts, and finding it to be very dear, mentioned it to his father, who agreed to furnish what they might want at a stipulated price, but furnished none until three or four days before his death; the colts remaining all the time in the father’s possession. And both these gifts were held to be invalid for the want of actual delivery. For the cases in equity, see Bryson v. Brownrigg, 9 Ves. 1; Antrobus v. Smith, 12 Ves. 39; Hooper v. Goodwin, 1 Swanst. 485, and note on Walter v. Hodge, 2 Id. 106, and the cases ot donatio causa mortis, in which delivery is held to be necessary to the perfection of the gift, and passing the right and title. Ward v. Turner, 2 Ves. sen. 439. The only difference between the donation causa mortis and inter vivos, is, that the latter is absolute and unconditional, the other is in contemplation of death, and therefore subject to the implied condition, that the thing is to be restored if the donor recovers; but to give a right to the donee, the gift must be perfected alike in both cases, by delivery. If the subject of the gift be incapable of delivery, it cannot be given by parol, but must be transferred by some writing, and a delivery of that writing. In the case before us, neither the bond in question, nor the money due upon it, could be effectually given, or forgiven, or released to the obligor, but by the obligee’s can-celling or destroying it with that avowed intention, or surrendering it to the obligor, or to some other for him, or by some instrument in writing to that effect; nor could any suit in law or ^equity be maintained upon such an imperfect gift, it being nudum pactum. The-strongest case for the defendant, which he could have asked the court to certify, upon the evidence, was that the defendant had proved that the obligee verbally gave him the bond and the money due upon it, without delivering it to him; and that this was the only fact proved in the case: and then we should have held, that a new trial ought to have been granted. I am of opinion, that the judgment of the circuit court should be affirmed.
CABELL, J.
The principle decided in Bennett v. Hardaway, is, that this court, not possessing the means of deciding correctly, will not undertake to decide at all, on the credit of witnesses; and, consequently, that if a, bill of exceptions to the judgment of an inferiour court, granting or refusing a new trial, be so framed as that this court cannot get at the right of the case, without deciding on the credit of the witnesses, the exception shall be considered as incorrectly taken, and the judgment shall be affirmed. Hence it has become a general rule, that a bill of exceptions ought to state the facts which the inferiour court considered as proved, and not merely the evidence, or what the witnesses testified. The case to which this rule was applied in Bennett v. Hardaway, was a case of contradictory testimony; for judge Roane, who delivered the opinion of the majority of the court, expressly said, that “the evidence, as it appeared on the record, was conflicting and contradictory.” But the principle is equally applicable to a case, where there is no conflict in the testimony; as in the case of Carrington v. Bennett. And I will here take occasion to observe, that although I did not sit in that case, I have attentively considered it, and approve of the decision. But, though a bill of exceptions may have violated the general rule, and may have stated the evidence given, instead of the facts proved, it does not necessarily follow, that the judgment excepted to must be affirmed. For, if the evidence *stated be such, that, excluding all adduced by the party against whom the court decided, and admitting the truth of all adduced by the other, the judgment of the inferiour court would still be wrong, then the principle decided in Bennett v. Hardaway, would not prevent this court from reversing such judgment; because, in such a case, this court would not have to decide on the credit of the witnesses; it would proceed on the admission of their credit. To permit such a judgment to stand, merely because the bill of exceptions had not complied with the general rule, which requires the statement of facts, and not of evidence, would be to stretch the rule beyond its principle, and to sacrifice justice to the forms intended for its protection. And such would be the case, if the judgment of the county court, now under consideration, were to be affirmed: for, if all the evidence adduced by the plaintiff at the trial were expugned from the record, and if the truth of every word said by the defendant’s witnesses be admitted, nothing is clearer, than that the verdict ought to have been for the plain *354 tiff; and, consequently, that the county court ought to have granted a new trial.
The judgment of the circuit court, reversing that of the county court, and remanding the cause for a new trial, is affirmed.